# EXHIBIT 1

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
https://www.courts.nh.gov

## RULE 7 NOTICE OF MANDATORY APPEAL

This form should be used for an appeal from a final decision on the merits issued by a superior court or circuit court except for a decision from: (1) a post-conviction review proceeding; (2) a proceeding involving a collateral challenge to a conviction or sentence; (3) a sentence modification or suspension proceeding; (4) an imposition of sentence proceeding; (5) a parole revocation proceeding; (6) a probation revocation proceeding; (7) a landlord/tenant action or a possessory action filed under RSA chapter 540; (8) an order denying a motion to intervene; or (9) a domestic relations matter filed under RSA chapters 457 to 461-A other than an appeal from the first final order. (An appeal from the first final order issued in a domestic relations matter filed under RSA chapters 457 to 461-A should be filed on this form.)

1. COMPLETE CASE TITLE AND CASE NUMBERS IN TRIAL COURT

**PC Connection, Inc. v. Brok-Alan Woodward-Griffith, et al**
**Case No. 216-2023-CV-00220**

2. COURT APPEALED FROM AND NAME OF JUDGE(S) WHO ISSUED DECISION(S)

**Hillsborough Superior Court North**
**Hon. David A. Anderson**

3A. APPEALING PARTY: NAME, MAILING ADDRESS, E-MAIL ADDRESS, AND TELEPHONE NUMBER.

**Brok-Alan Woodward-Griffith**

**471 Silver Street**
**Apt 105**
**Manchester, NH, 03103**

E-Mail address: **brokgrf@gmail.com**
Telephone number: **(603) 325-0749 ext**

3B. APPEALING PARTY'S COUNSEL: NAME, BAR ID NUMBER, FIRM NAME, MAILING ADDRESS, E-MAIL ADDRESS. AND TELEPHONE NUMBER.
**PRO SE**

E-Mail address: ______
Telephone number: ______

4A. OPPOSING PARTY: NAME, MAILING ADDRESS, E-MAIL ADDRESS, AND TELEPHONE NUMBER.

**PC Connection, Inc.**

**730 Milford Road**
**Merrimack, NH, 03054**

E-Mail address: **ir@connection.com**
Telephone number: **(603) 683-2000 ext**

4B. OPPOSING PARTY'S COUNSEL: NAME, BAR ID NUMBER, FIRM NAME, MAILING ADDRESS, E-MAIL ADDRESS. AND TELEPHONE NUMBER.
**Christopher H.M. Carter, #12452**

**Hinckley Allen & Snyder, LLP**
**650 Elm Street, Suite 500**
**Manchester, NH, 03101**

E-Mail address: **ccarter@hinckleyallen.com**
Telephone number: **(603) 225-4334 ext**

**Case Name:** PC Connection, Inc. v. Brok-Alan Woodward-Griffith, et al Case No. 216-2023-CV-00220

RULE 7 NOTICE OF MANDATORY APPEAL

5. NAMES OF ALL OTHER PARTIES AND COUNSEL IN TRIAL COURT

**Data Center Warehouse, LLC**
**23401 Avenida De La Carlota, #325 and, or #200**
**Laguna Hills, CA, 92653**
**Joshua D. Nadreau, Esq.**
**Fisher Phillips, LLP**
**200 State Street, 13th Floor**
**Boston, MA, 02109**

6. DATE OF CLERK'S NOTICE OF DECISION OR SENTENCING. ATTACH OR INCLUDE COPY OF NOTICE AND DECISION.

**09/14/2026**

DATE OF CLERK'S NOTICE OF DECISION ON POST-TRIAL MOTION, IF ANY. ATTACH OR INCLUDE COPY OF NOTICE AND DECISION.

______________________________

7. CRIMINAL CASES: DEFENDANT'S SENTENCE AND BAIL STATUS

______________________________

8. APPELLATE DEFENDER REQUESTED? YES or NO: **No**
IF YOUR ANSWER IS YES, YOU MUST CITE STATUTE OR OTHER LEGAL AUTHORITY UPON WHICH CRIMINAL LIABILITY WAS BASED AND SUBMIT A CURRENT REQUEST FOR A LAWYER FORM (FINANCIAL STATEMENT). SEE SUPREME COURT RULE 32(4).

9. IS ANY PART OF CASE CONFIDENTIAL? YES or NO: **No**
IF SO, IDENTIFY WHICH PART AND CITE AUTHORITY FOR CONFIDENTIALITY. SEE SUPREME COURT RULE 12.

10. IF ANY PARTY IS A CORPORATION, LIST THE NAMES OF PARENTS, SUBSIDIARIES AND AFFILIATES.

**PC Connection Inc., is a Delaware corporation. Known subsidiaries: More Direct, PC Connection Sales Corp., PC Connection Express, GovConnection, GlobalServe**

11. DO YOU KNOW OF ANY REASON WHY ONE OR MORE OF THE SUPREME COURT JUSTICES WOULD BE DISQUALIFIED FROM THIS CASE? YES or NO: **Yes**

IF YOUR ANSWER IS YES, YOU MUST FILE A MOTION FOR RECUSAL IN ACCORDANCE WITH SUPREME COURT RULE 21A.

12. IS A TRANSCRIPT OF TRIAL COURT PROCEEDINGS NECESSARY FOR THIS APPEAL? SEE SUPREME COURT RULE 15, COMMENT.
YES or NO: **Yes**

IF YOUR ANSWER IS YES, YOU MUST COMPLETE THE TRANSCRIPT ORDER FORM ON PAGE 4 OF THIS FORM.

**Case Name:** PC Connection, Inc. v. Brok-Alan Woodward-Griffith, et al Case No. 216-2023-CV-00220

RULE 7 NOTICE OF MANDATORY APPEAL

13. LIST SPECIFIC QUESTIONS TO BE RAISED ON APPEAL, EXPRESSED IN TERMS AND CIRCUMSTANCES OF THE CASE, BUT WITHOUT UNNECESSARY DETAIL. STATE EACH QUESTION IN A SEPARATELY NUMBERED PARAGRAPH.

**1. Whether the trial court erred, or committed plain error, in any of the attached orders?**

**2. Whether the trial court erred in entering final decision on the merits without holding a hearing or trial on the merits?**

**All questions otherwise preserved under plain error doctrine, applicable New Hampshire common law, and/or pursuant to the futility doctrine (See Rand, et al v. State of New Hampshire, Appeal No. 2026-0150, State Notice of Appeal - pursuant to futility doctrine, acceptance, and equal protection)**

**Without prejudice, Appellant reserves all rights and waives none, including to amend as needs and circumstances so dictate.**

14. CERTIFICATIONS

I hereby certify that every issue specifically raised has been presented to the court below and has been properly preserved for appellate review by a contemporaneous objection or, where appropriate, by a properly filed pleading. To the extent that an unpreserved issue is raised as plain error, I hereby certify that I have specifically identified that issue as plain error in section 13.

/s/Brok-Alan Woodward-Griffith, pro se
Appealing Party or Counsel

I hereby certify that on or before the date below, copies of this notice of appeal were served on all parties to the case and were filed with the clerk of the court from which the appeal is taken in accordance with Supreme Court Rules 5(1) and 26(2) and with Rule 18 of the Supplemental Rules of the Supreme Court.

10/14/2026
Date

/s/Brok-Alan Woodward-Griffith, pro se
Appealing Party or Counsel

**Case Name:** PC Connection, Inc. v. Brok-Alan Woodward-Griffith, et al Case No. 216-2023-CV-00220

RULE 7 NOTICE OF MANDATORY APPEAL

## TRANSCRIPT ORDER FORM

INSTRUCTIONS:
1. If a transcript is necessary for your appeal, you must complete this form.
2. List each portion of the proceedings that must be transcribed for appeal, e.g., entire trial (see Supreme Court Rule 15(3)), motion to suppress hearing, jury charge, etc., and provide information requested.
3. Determine the amount of deposit required for each portion of the proceedings and the total deposit required for all portions listed. Do not send the deposit to the Supreme Court. You will receive an order from the Supreme Court notifying you of the deadline for paying the deposit amount to the court transcriber. Failure to pay the deposit by the deadline may result in the dismissal of your appeal.
4. The transcriber will produce a digitally-signed electronic version of the transcript for the Supreme Court, which will be the official record of the transcribed proceedings. Parties will be provided with an electronic copy of the transcript in PDF-A format. A paper copy of the transcript may also be prepared for the court.

| **PROCEEDINGS TO BE TRANSCRIBED (Please confirm dates with Trial Court)** | | | | | |
|---|---|---|---|---|---|
| PROCEEDING DATE (List each day separately, e.g. 5/1/11; 5/2/11; 6/30/11) | TYPE OF PROCEEDING (Motion hearing, opening statement, trial day 2, etc.) | NAME OF JUDGE | LENGTH OF PROCEEDING (in .5 hour segments, e.g.,1.5 hours, 8 hours) | RATE (standard rate unless ordered by Supreme Court) | DEPOSIT |
| 06/02/2023 | Preliminary Hearing | Anderson, J. | .75 | X $170.00 | $ |
| | | | . | X $170.00 | $ |
| | | | | X $170.00 | $ |
| | | | | X $170.00 | $ |
| | | | | X $170.00 | $ |
| | | | | X $170.00 | $ |
| | | | | X $170.00 | $ |
| | | | | X $170.00 | $ |
| | | | | X $170.00 | $ |
| | | | | X $170.00 | $ |
| | | | | **TOTAL DEPOSIT** | $ |

| **PROCEEDINGS PREVIOUSLY TRANSCRIBED** | | | | | |
|---|---|---|---|---|---|
| PROCEEDING DATE (List date of each transcript volume) | TYPE OF PROCEEDING (Motion hearing, opening statement, trial day 2, etc.) | NAME OF JUDGE | NAME OF TRANSCRIBER | DO ALL PARTIES HAVE COPY (YES OR NO) | DEPOSIT FOR ADDITIONAL COPIES |
| | | | | | TBD |
| | | | | | TBD |
| | | | | | TBD |

**NOTE:** The deposit is an estimate of the transcript cost. After the transcript has been completed, you will be required to pay an additional amount if the final cost of the transcript exceeds the deposit. Any amount paid as a deposit in excess of the final cost will be refunded. The transcript will not be released to the parties until the final cost of the transcript is paid in full.

Filed
File Date: 7/16/2026 11:30 PM
Hillsborough Superior Court Northern District
E-Filed Document

STATE OF NEW HAMPSHIRE

HILLSBOROUGH SUPERIOR, NORTHERN SS

| | |
|---|---|
| PC CONNECTION, INC., d/b/a CONNECTION,<br><br>Plaintiff,<br><br>vs.<br><br>BROK-ALAN WOODWARD-GRIFFITH DATA CENTER WAREHOUSE, LLC<br><br>Defendant | Case No.: 216-2023-CV-00220<br><br>**DEFENDANT GRIFFITH'S VERIFIED MOTION TO RECONSIDER THE COURT'S ORDERS GRANTING PLAINTIFF'S SUMMARY JUDGEMENT (DOC. 335, 365) WITH INCORPORATED AFFIDAVIT** |

**HEARING REQUESTED PURSUANT TO N.H. SUPER. CT. R. 12(e)(2) and 13(b)**

NOW COMES **forced *pro se***[1] Defendant Brok-Alan Woodward-Griffith ("Griffith") and respectfully moves this Honorable Court to reconsider its Order and prior Order (Doc. 335, 365) granting Plaintiff PC Connection, Inc.'s motion for summary judgement (Doc. 365). This motion is filed because the Orders rest upon material errors of fact and law, overlooks controlling legal authority and dispositive portions of the record, and results in manifest injustice that may and should be corrected before final judgement. Reconsideration is warranted where the Court has overlooked controlling law, misapprehended material facts, or where correct is necessary to prevent manifest injustice. Those circumstances are present here.

The Order (Doc. 365) and prior order (Doc. 335) grants partial summary judgement despite a record containing numerous genuine disputes of material fact, verified evidence submitted by Defendant, admissions by Plaintiff bearing directly upon essential elements of its

---

[1] "Forced *pro se*" reflects Defendant's involuntary status due to fraud, obstruction, unlawful and/or other improper conduct, that substantially impaired and/or prevented Defendant's access to unconflicted legal counsel, and/or was part of a deliberate strategy to deprive and/or obstruct Defendant's rights.

claims, and repeated requests by every party for oral argument, that were never granted. Rather than resolve factual disputes in light most favorable to the non-moving party, as required by New Hampshire law, the Order and prior order effectively resolved disputed issues of material fact against Defendant without the benefit of testimony, cross-examination, or an evidentiary hearing.

This case has never presented a record appropriate for summary judgement. Instead, it presents disputed facts concerning the parties contractual rights, Plaintiff's conduct before commencing litigation, the legal enforceability of the restrictive covenants at issue, Plaintiff's own admission concerning enforcement of that agreement, and the consequences flowing from those admissions. Those issues require adjudication through the ordinary fact-finding process and not disposition as a matter of law.

Moreover, the Court entered its Order and prior order while Defendant remained within the applicable briefing period following Plaintiff's reply, and before Defendant had a meaningful opportunity to address matters raised therein. Coupled with the absence of oral argument despite repeated requests, the procedure employed substantially prejudices Defendant's right and ability to be heard on issues affecting significant property, contractual, and constitutional rights.

For these reasons, and those more fully set forth below, Defendant respectfully requests that the Court vacate its Order and prior order, deny Plaintiff's motion for summary judgement, schedule oral argument and an evidentiary hearing, and/or *sua sponte* grant Plaintiff's prior motion for summary judgement, and such additional relief as justice requires.

## I. Threshold Issue: An Evidentiary Hearing is Necessary Before the Court May Resolve The Disputed Factual Record

1. As a threshold matter, Defendant respectfully submits that this motion cannot be fairly decided solely upon competing offers of proof because the issues present extend well beyond

questions of law. The motion requires the Court to determine whether genuine disputes of material fact exists; whether Plaintiff's evidentiary submissions satisfy applicable rules; whether Plaintiff's admissions are legally dispositive; whether Defendant's verified factual submissions were properly considered; and whether the procedures employed in resolving the summary judgement motions afforded the parties the fundamental fairness requirements and opportunity to be heard required under the State and Federal Constitutions, and court rules.

2. These issues necessarily involve factual determinations that cannot properly be resolved through unsworn advocacy alone, where the record itself demonstrates substantial material factual disputes. Accordingly, Defendant respectfully re-requests his requests by right to oral argument and, if necessary, evidentiary hearing so that disputed issues may be resolved upon a complete factual record, rather than upon conflicting characterizations of that record.

3. Accordingly, Defendant objects to this motion being resolved upon the offer of proof standard, pursuant to Superior Court Administrative Order 15 and/or otherwise.

## PROCEDURAL AND FACTUAL BACKGROUND

4. Plaintiff commenced this action by filing a complaint seeking extraordinary injunctive relief and enforcement of an alleged restrictive covenant contract. Throughout this litigation, Plaintiff has consistently maintained that Defendant violated contractual obligations that Plaintiff contends remained enforceable following Defendant's separation from Plaintiff's employment.

5. Defendant has consistently denied these allegations and has maintained that the restrictive covenant is unenforceable under New Hampshire law, that Plaintiff materially breached the employment relationships before Defendant's resignation, and that Plaintiff's own conduct

precludes the equitable relief it sought and obtained, Defendant has further asserted that genuine issues of material fact exist regarding virtually every essential element of Plaintiff's claims.

6. As discovery progressed, Defendant submitted verified pleadings, affidavits, statements of material fact, and documentary evidence supporting his defenses and counterclaims. Defendant likewise filed detailed objections to Plaintiff's motions for summary judgement, identifying disputed material factual issues and legal deficiencies that, under the applicable summary judgement rules, required denial of Plaintiff's motion.

7. Defendant was further deprived of a meaningful opportunity to address Plaintiff's most recent submissions before the Court ruled. The Order (Doc. 365) was issued while Defendant remained within the applicable briefing period and before Defendant had completed preparation of his responsive filing addressing matters raised in Plaintiff's reply.

8. The resulting order resolved disputed factual issues without testimony, without oral argument, without an evidentiary hearing, and without viewing the evidence and record in the light most favorable to the non-moving party – as did the prior summary judgement order (Doc. 335).

9. This motion does not merely disagree with the Court's conclusions. Rather, it identifies special legal and factual errors which, individually and collectively, require reconsideration in order to prevent manifest injustice.

## II. The Standard for Reconsideration

10. Superior Court Rule 12(e) authorizes reconsideration where the Court has overlooked or misapprehended material facts or controlling legal authority, or where reconsideration is necessary to prevent manifest injustice.

11. New Hampshire trial courts also possess inherent authority to reconsider interlocutory rulings before final judgement whenever necessary to correct legal error or prevent manifest injustice. That authority exists precisely because interlocutory orders remain subject to revision until final judgement has been rendered. This courts recent order (Doc. 365) and prior order on summary judgement (Doc. 335) are both interlocutory orders.

12. Reconsideration is therefore appropriate where the Court has overlooked dispositive evidence, applied incorrect legal standard, failed to consider controlling precedent, or otherwise entered an order that materially prejudices the rights of a party.

13. Each of those circumstances exist here.

14. The present Order (Doc. 365) and prior order (Doc. 335) overlooks material portions of the record, fails to address Plaintiff's admissions regarding essential elements of its claims, resolved disputed factual issues contrary to summary judgement rules, law and statute, and was entered following a procedure that deprived Defendant a meaningful opportunity to be heard, despite repeated requests for oral argument ***from all parties***.

15. Because those errors affect the integrity of the summary judgement ruling itself, reconsideration is not only appropriate but necessary to preserve confidence in the fairness of these proceedings and to ensure that this matter is resolved upon a complete and properly developed record.

## III. The Court's Orders Cannot Stand Because Genuine Issues of Material Fact Precluded Summary Judgement

16. Summary judgement is an extraordinary remedy. It may be granted only where the moving party demonstrates that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgement as a matter of law. In deciding such a motion, the

Court must view the evidence and record, together with every reasonable inference rising therefrom, in the light most favorable to the non-moving party.

17. The Court's Orders cannot be reconciled with that standard because the record contains numerous disputed issues of material fact, many of which were supported by verified pleadings, sworn affidavits, documentary evidence, and Plaintiff's own submissions.

18. Rather than determining whether disputes existed, the Orders necessarily and improperly resolved disputed factual questions in Plaintiff's favor. Summary Judgement rules, statute, and caselaw does ***not*** authorize the Court the weigh credibility, choose between competing factual narratives, or resolve contested issues that belong to the finder of fact.

19. Among the disputed issues presented were:

  a. Whether the restrictive covenant was enforceable under New Hampshire law;
  b. Whether Plaintiff materially breached the employment relationship before seeking equitable relief;
  c. Whether Plaintiff's own conduct barred the equitable remedies requested;
  d. Whether Plaintiff satisfied contractual conditions precedent to enforcement;
  e. Whether Plaintiff's evidence established each essential element of its claims; and
  f. Whether the Defendant's verified factual submissions and supporting evidence defeated Plaintiff's entitlement to judgement as a matter of law.

20. Each of these questions involves disputed facts central to Plaintiff's claims. None of them could be properly resolved on summary judgement where competent evidence existed supporting Defendant's position.

21. The Court's role at summary judgement is not to determine which party is more persuasive. Rather, the Court must determine whether reasonable fact-finders could reach different

conclusions based on the totality of the record before it. Here, the record plainly establishes that they could.

22. Indeed, Defendant submission verified factual assertions supported by affidavit and documentary evidence. Plaintiff disputed those assertions, but disagreement alone does not eliminate a genuine issue of material fact. To the contrary, it confirms the existence of one. Where competing evidence exists concerning material facts, summary judgement must be denied and the matter reserved for trial.

23. The Order (Doc. 365) and prior order (Doc. 335) there exceeds the proper scope of summary judgement rules, law, and statute, because it effectively resolved disputed and contested material fact issues without testimony, without credibility determinations made through adversarial process, and without affording Defendant the opportunity to be fully and fairly heard, such as through oral argument or hearing where evidence could be presented.

24. This error is particularly significant because the Court's ruling determines substantial contractual and property rights. Such rights cannot be adjudicated through summary disposition where material factual disputes remain unresolved.

25. For this reason alone, reconsideration is warranted, and the orders should be vacated, and Plaintiff's motions for summary judgement should be denied.

## IV. Plaintiff's Own Admissions Created Genuine Issues of Material Fact that Required Denial of Summary Judgement

26. Independent of Defendant's evidence, statements of fact, and affidavits, Plaintiff's own filings demonstrate the existence of genuine issues of material fact.

27. Defendant previously identified specific admissions by Plaintiff that bear directly upon Plaintiff's ability to satisfy essential elements of its claims, including Plaintiff's ability to

establish the contractual pre-requisites necessary to enforce the restrictive covenants at issue. Defendant specifically raised these matters in opposition to summary judgement.

28. Those admissions were material because they concerned elements upon which Plaintiff bore the burden of proof. Where the moving party's own submissions reveal factual uncertainties or outright undermine central and essential elements of it's claim, summary judgement is improper as a matter of law.

29. At a bare minimum, Plaintiff's submissions and admissions created competing factual inferences that should have been resolved only after the presentation of testimony and evidence. Instead, those disputed inferences were resolved in Plaintiff's favor without the procedural protections and constitutional rights that ordinarily accompany adjudication of disputed facts.

30. The Court's orders do not meaningfully address these admissions, or explain why they fail to create a genuine issue requiring trial. The omission by the Court is significant because a court must evaluate the full record, rather than isolated portions favorable to the moving party of a summary judgement motion.

31. Because Plaintiff's own submissions and admissions raise factual questions concerning its entitlement to relief, summary judgement should have been denied even without reference to Defendant's independent evidence.

32. When Defendant's verified submissions are considered together with Plaintiff's admissions, the conclusion is unavoidable: genuine disputes of material fact permeate this record, and preclude judgment as a matter of law.

33.

## V. Plaintiff Failed to Properly Controvert Defendant's Verified Statement of Material Facts, And Those Facts Should Have Been Deemed Admitted

34. Defendant submitted a verified statement of material facts, supported by sworn affidavit, and incorporated that affidavit into his summary judgement filings. Those submissions were not mere argument; they constituted competent evidentiary material for purposes of summary judgement. See Doc. 181.

35. Plaintiff was therefore required to respond with competent evidence, and counter-affidavit, demonstrating the existence of a genuine dispute as to each material fact upon which Plaintiff relied. Mere denials, conclusions, argument of counsel, or generalized objections are insufficient to satisfy that burden. Plaintiff's response (Doc. 257) to Defendant's statement of material facts (Doc. 181) offered no more than mere denials, and blanket objections – and no counter-affdaivits.

36. New Hampshire law has long recognized that a party opposing or responding to summary judgement must do more than simply deny the opposing parties factual assertions. See Omiya v Castor, 130 N.H. 234, 196 (1987) ("the response must do more than give notice of his objection to the motion or dispute the facts set forth in the moving parties affidavit."); See also New Hampshire Div. of Human Services v. Allard, 141 N.H. 672, 568 (1997) ("to the extent that the non-moving party either ignores or does not dispute facts set forth in the moving party's affidavits, they are deemed admitted for the purposes of the motion."). Rather, the response must identify competent evidence demonstrating that a genuine issue exists for trial. Where properly supported factual assertions are not adequately controverted, they are deemed admitted for purposes of the motion.

37. Defendant specifically raised this issue before the Court and identified Plaintiff's failure to meaningfully controvert Defendant's verified factual submissions. Plaintiff nevertheless relied primarily upon blanket denials, legal argument, and generalized objection rather the submissions of competent evidence directed to the material facts asserted by Defendant.

38. Consequently, the Court was presented with verified factual assertions by Defendant, supported by affidavit, that were never properly rebutted according to the manner contemplated by summary judge rules, statute and law.

39. At minimum, the Court was required to determine whether Plaintiff had met its evidentiary burden before disregarding Defendant's verified factual submissions. The Order, and prior order, does not undertake that analysis.

40. Nor do either of the orders identify which material facts, if any, were genuinely disputed by competent evidence, or explain why Defendant verified submissions, deemed admitted by Plaintiff's insufficient response, were insufficient to create factual issue requiring trial.

41. That omission is significant because the Court may not disregard competent evidence submitted by the non-moving party without explaining why such evidence fails to create a genuine issue of material fact.

42. Even assuming, *arguendo*, that the Court believed additional evidentiary support was necessary, the appropriate course ***would not*** have been to grant summary judgement. Instead, fundamental fairness required that Defendant be afforded notice of any perceived deficiency and a reasonable opportunity to supplement the record before dispositive relief was granted. See Omiya v Castor, 130 N.H. 234, 238 (1987) (assuming affidavits are insufficient, the summary judgement statute "permits the court to look beyond the opposing party's affidavit in order to determine whether the opposing party has demonstrated that a genuine issue of

material fact exists."); Cilley v. N.H. Ball Bear'gs, 128 N.H. 401, 405 (1986) (trial judge has the power to reverse, *sua sponte*, an earlier denial of motion for summary judgement); Blagbrough v. Town of Wilton, 145 N.H. 118, 125 (2000) (trial court may reverse a pretrial ruling that disposes of an issue for trial, pursuant to the court providing notice adequate to give them opportunity to "present evidence relating to the newly revived issue.")

43. This is particularly true where Defendant appeared without counsel and repeatedly requested oral argument. Nothing in the record demonstrates that Defendant was advised that the Court considered his verified submissions inadequate, or that he would be denied an opportunity to cure any perceived defect before entry or denial of judgement

44. The resulting prejudice is obvious. The Court entered judgement without first determining whether Plaintiff had properly controverted Defendant's verified evidence (e.g. Doc. 181, 257) and without affording Defendant any opportunity to address perceived deficiencies.

45. Because Defendant's verified statement of material facts remained supported by competent evidence and was not properly controverted, those facts should have been considered in deciding Plaintiff's motion. Once those facts are properly considered, summary judgement, and the Orders, cannot be sustained.

## VI. The Failure to Hold Oral Argument or Evidentiary Hearing Resulted in a Fundamentally Unfair Proceeding

46. Independently, reconsideration is warranted because Defendant was denied a meaningful opportunity to be heard before the Court entered an interlocutory order disposing of substantial rights, resulting in a fundamentally unfair proceeding. State v. Griffin, 174 NH 711, 718-719 ("A fundamentally unfair adjudicatory procedure is one, for example, that gives a party a significant advantage or places a party in a position of prejudice.")

47. The record reflects that oral argument was requested on the dispositive motions before the Court. Despite those requests, no hearing was conducted by summary judgment was granted, resulting in the Court's interlocutory orders (Doc. 335, 365).

48. While oral argument is not required in every case, fundamental fairness dictates that where dispositive motions present substantial factual disputes, competing evidentiary submissions, complex legal questions, or issues of significant constitutional importance, the parties receive a meaningful opportunity to address those matters before judgement is entered. Moreover, for a summary judgement motion to have any biding effect, the party ***must*** receive a full opportunity to be heard, which includes hearing and potential amendment. See Cilley v. New Hampshire Ball Bearings, Inc., 128 N.H. 401, 405 (N.H., 1986) ("…the plaintiff was not denied a full opportunity to be heard, where a hearing was held on the summary judgment motion prior to the court's initial denial, and where the plaintiff was allowed to amend the pleadings before the court granted the motion.")

49. This case presented all of those circumstances. The record contained competing affidavits, disputed factual assertions, substantial admissions by Plaintiff undermining their case, questions concerning the enforceability of restrictive covenants, allegations of material contractual breach, disputed issues concerning equitable relief, and multiple questions regarding the proper application of summary judgement.

50. Those issues could not be fairly resolved solely through competing written submissions without affording the parties an opportunity to clarify the record, address the Court's questions, and respond to legal issues raised during argument. The prejudice flowing from the absence of oral argument was then compounded when the Court issued its latest Order while Defendant remained within the applicable briefing period following Plaintiff's reply.

Defendant was therefore deprived of the opportunity to fully respond before dispositive relief, on an interlocutory basis, was granted.

51. Due process guarantees the right to be meaningfully heard and in a meaningful manner. Under the circumstances presented here, Defendant respectfully submits that guarantee was not lived up to here, and Defendant's due process rights were violated.

52. The combined effect of unresolved factual disputes, the absence of oral argument, the premature issuance of the interlocutory orders, and the failure to meaningfully address Defendant's verified evidence (which was also deemed admitted) resulted in a proceeding that was fundamentally unfair and materially prejudicial to Defendant's rights.

53. Reconsideration is therefore necessary not only to correct legal error, but also to preserve confidence in the fairness and integrity of these proceedings.

## VII. Reconsideration is Necessary to Prevent Manifest Injustice and Preserve Integrity of the Judicial Process

54. Beyond the specific legal errors identified above, this Court possesses both the authority and the obligation to review its own proceedings and reconsider interlocutory orders where necessary to prevent manifest injustice. See Merrimack Valley Wood Products v. Near, 152 N.H. 192, 203 (2005) (trial court retains inherent authority to "review its own proceedings to correct error or prevent injustice" at any stage). That authority exists so that errors may be corrected before final judgement and before unnecessary appellate proceedings become inevitable.

55. Defendant respectfully submits this is precisely such a case.

56. The Court's interlocutory orders resolved disputed factual issues, overlooked material evidence submitted by Defendant, failed to address Plaintiff's admissions bearing upon

essential elements of its claims, and granted summary judgement without affording Defenant the meaningful opportunity to be heard that was repeatedly requested throughout these proceedings.

57. The cumulative effect of these errors is far greater than any individual ruling viewed in isolation. Together, they produced a result that effectively deprived Defendant of fundamental fairness, due process, equal protection, and to present his case and defense on the merits despites a record containing substantial factual disputes.

58. Respectfully, reconsideration does not require the Court to determine that Defendant will ultimately prevail at trial. Rather, it requires only recognition that the present record is not one upon which judgement may properly be entered as a matter of law.

59. If genuine issues of material fact remain – and Defendant respectfully submits that the record demonstrated numerous such disputes – the proper remedy is denial of summary judgement and resolution of those issues through the ordinary adversarial process.

60. The interest of justice are best served when a case involving disputed facts are decided upon a complete evidentiary record rather than through premature disposition. That principle is especially important where the litigant concerns contractual rights, statutory and constitutional rights, equitable relief, and issues with significant economic and professional consequences to the Defendant and the public.

61. Vacating the present orders will not prejudice Plaintiff. Plaintiff will retain every opportunity to present its claims and evidence at trial. By contract, allowing the present orders to stand would have substantially prejudiced Defendant by foreclosing adjudication of claims and defenses that have never been meaningfully heard.

62. Reconsideration therefore promotes – not undermines – the efficient administration of justice. Correcting substantial errors of law now avoids unnecessary appellate proceedings, preserves judicial resources, and ensures that any final judgement rests upon a complete factual and legal record.

63. For all these reasons, Defendant respectfully submits that the Court should exercise its inherent authority to vacate the orders granting Plaintiff summary judgement, and restore this matter to the trial docket for further proceedings consistent with New Hampshire law.

**VIII. The Interests of Justice Favor a Decision on the Merits**

64. New Hampshire courts have long recognized a strong preference that civil disputes be resolved upon their merits whenever reasonably possible, rather than through procedural disposition where material factual disputes remain.

65. Defendant has consistently participated in these proceedings, timely asserted his defenses, submitted verified pleadings and affidavits, responded to Plaintiff's motions, and repeatedly requested the opportunity to present oral argument.

66. The record demonstrates that Defendant's continued effort to obtain a full and fair adjudication based upon the evidence, record, and governing law, despite being deprived of any opportunity to be meaningfully heard. Nothing in this motion seeks delay. To the contrary, Defendant requests only that this matter proceeding in accordance with the standards governing summary judgement, and the constitutional guarantees of due process.

67. The public's confidence in the judicial system depends upon the assurance that the disputed factual issues will be resolved through fair procedures, and that dispositive motions will be granted ***only*** where the law clearly permits no other result.

68. Because that standard has plainly not been satisfied here, reconsideration is both appropriate and necessary.

## IX. CONCLUSION

69. This motion presents more than disagreement with the Court's conclusions. It demonstrates that the present Order (Doc. 365) and the prior order (Doc. 335) rests upon disputed material facts, overlooks significant portions of the evidentiary record, fails to fully address Plaintiff's admissions bearing upon essential elements of its claims, and was entered through a procedure that deprived Defendant of a meaningful opportunity to be heard before the entry of dispositive releief.

70. Respectfully, the summary judgement rules, statute, and law does not permit a court to resolve genuine disputes of material fact, weight competing evidence, or determine credibility on summary judgement. Those functions remain the exclusive province of the fact-finder after the parties have been afforded the opportunity to fully present their evidence after a trial or hearing on the merits.

71. Defendant has consistently maintained that Plaintiff's claims fail both legally and factually. At a minimum, however, the record establishes numerous genuine disputes that require resolution through the ordinary trial process. Under those circumstances, summary judgement cannot stand. The Court possess both the authority and the responsibility to correct legal error and prevent manifest injustice. Exercising that authority here will preserve the integrity of these proceedings, ensure compliance with New Hampshire law governing summary judgement, and permit this matter to be resolved upon its merits rather than upon an incomplete procedural record.

72. Accordingly, Defendant respectfully requests that the Court grant this motion for reconsideration, vacate its interlocutory orders (Doc. 335, 365) granting partial summary judgement to Plaintiff, deny Plaintiff's motion for summary judgement, and grant such additional relief as justice requires.

73. Additionally, without prejudice, Defendant as a **forced *pro se*** reserves all rights, including to supplement, amend, and/or renew this motion, as new facts and circumstances so dictate, and as Defendant becomes aware of any new caselaw in support of his position, or further errors of law and/or fact become known to him.

## PRAYER FOR RELIEF

**WHEREFORE**, without prejudice and without waiving any rights, Defendant Brok-Alan Woodward-Griffith respectfully requests that this Honorable Court:

a. Grant this motion for Reconsideration;

b. Vacate the Court's orders (Doc. 335, 365) granting partial summary judgement to Plaintiff;

c. Deny Plaintiff's Motions for Partial Summary Judgement in their entirety because genuine issues of material fact remain for trial;

d. Restore all Defendant's claims, defenses, and counterclaims affected by the orders of this Court;

e. Schedule oral argument and, if necessary, evidentiary hearing on the issues presented by the parties cross motions and objections to summary judgement;

f. Permit the parties to submit such supplemental affidavits or evidentiary materials as the Court deems appropriate to ensure that any ruling is based upon a complete and fully developed record;

g. Grant such further relief as law, equity, and justice requires to protect Defendant's constitutional rights to due process, equal protection, fundamental fairness, and to be meaningfully heard at a meaningful time before adjudication on the merits;

h. Any such other and further relief as this Honorable Court deems just, necessary, equitable, and proper.

Respectfully submitted,

Dated this 16th of July, 2026.

/s/Brok-Alan Woodward-Griffith

Brok-Alan Woodward-Griffith, *pro se*
471 Silver Street, #105
Manchester, NH, 03103
brokgrf@gmail.com
Ph: 603.325.0749

**CERTIFICATE OF SERVICE**
I hereby certify that a copy has been provided to all parties via the Court's eFile service.
**/s/Brok-Alan Woodward-Griffith**

**FACTUAL AVERMENT**
I hereby make oath and swear that the facts and allegations contained herein are true and accurate to the best of my knowledge, belief, and ability, without waiving the right to amend same as facts and circumstances so dictate. Further affiant sayeth naught.
**/s/Brok-Alan Woodward-Griffith**

DENIED as untimely. Under Superior Court Rule 12(e), motions to reconsider are due within 10 days of the notice of the order. Here, the referenced orders were issued on June 26, 2026 and August 19, 2025. Defendant's motion is thus untimely and is denied on that basis. Further, the Court's review of the motion does not disclose any basis for reconsideration.

Honorable David A. Anderson
September 11, 2026

Clerk's Notice of Decision
Document Sent to Parties
on 09/14/2026

Filed
File Date: 5/6/2026 5:05 PM
Hillsborough Superior Court Northern District
E-Filed Document

STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS SUPERIOR COURT
*Northern District*

**Docket No. 216-2023-CV-00220**

PC Connection, Inc., d/b/a Connection

v.

Brok-Alan Woodward-Griffith
Data Center Warehouse, LLC

**MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S DAMAGES AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff PC Connection, Inc., d/b/a Connection ("Connection") moves for summary judgment on the sole remaining issue in this matter – the damages recoverable by Connection under its claim for breach of contract (Count III), due to Defendant Brok Griffith's breach of his Employee Agreement (the "Agreement") with Connection. The Agreement is explicit that Connection is entitled to recover the attorneys' fees incurred as a result of Griffith's breach of the Agreement. Since the Court has ruled that Griffith breached the Agreement, and Connection has the contractual right to recover the attorneys' fees it incurred as a result of that breach, the Court should rule that the reasonable attorneys' fees incurred as a result of Griffith's breach are Connection's recoverable damages under Count III.[1]

## I. BACKGROUND / PROCEDURAL HISTORY

1. The relevant factual background and procedural history are detailed in the Court's prior orders in this matter, including the Court's August 19, 2025 Order granting partial summary judgment to Connection (the "SJ Order") [Doc. 345].

---

[1] Should the Court grant this Motion, Connection intends to separately file a motion specifying the work and associated fees incurred as a result of Griffith's breach.

2. In brief, Griffith began working for Connection on November 4, 2019. SJ Order at 2. On that day, Griffith signed the Agreement, which contains restrictive covenants, including a non-disclosure covenant and non-solicitation covenant. *Id.; see also* Verified Complaint [Doc. No. 2], Exh. A (Employee Agreement). In signing the Agreement, Griffith acknowledged that Connection would be entitled to an award of attorneys' fees incurred because of a breach or threatened breach of the Agreement by Griffith. Specifically, § 4.6 of the Agreement states, in part:

> I also acknowledge and agree that, were I to breach any of the provisions of this Agreement, the harm to the Company would be irreparable. I therefore agree that, in the event of such a breach or threatened breach, the Company shall, in addition to any other remedies available to it, have the right to obtain preliminary and permanent injunctive relief against such breach or threatened breach without having to post a bond, **and will additionally be entitled to an award of attorneys' fees incurred in connection with securing any relief hereunder**. (Emphasis added.)

3. On March 8, 2023, Connection terminated Griffith's employment after discovering that Griffith had been working for one of Connection's competitors, Data Center Warehouse ("DCW"). SJ Order at 3-4. While still working for Connection, Griffith solicited Connection customers on behalf of DCW, and forwarded confidential information concerning Connection's customer to DCW. *Id.* at 4.

4. On April 3, 2023, Connection filed its Verified Complaint, which asserted claims against Griffith for, *inter alia*, injunctive relief (Count I) and breach of contract (Count III) as a result of Griffith's retention and use of Connection's confidential information and his violation of his non-disclosure and non-solicitation covenants with Connection.

5. On June 2, 2023, the Court entered a preliminary injunction order (Doc. 25) to enjoin Griffith from violating the non-solicitation covenant.

6. In the two years after the preliminary injunction order, Griffith filed an onslaught of pleadings, including multiple sets of counterclaims and amended counterclaims which the Court disposed of through dismissal orders issued May 2, 2024 (Doc. 150) and October 8, 2024 (Doc. 230), and through the August 19, 2025 Order.

7. On October 22, 2024, Connection moved for partial summary judgment on Count I and Count III. (Doc. 251.) After delays occasioned in part by Griffith filing improper interlocutory appeals with the Supreme Court, Griffith filed an objection to Connection's partial summary judgment motion on April 15, 2025. (Doc. 310.)

8. On August 19, 2025, the Court issued the SJ Order, which granted summary judgment to Connection on Count I and Count III. With respect to Count III, the Court concluded the undisputed facts establish that Griffith breached the non-solicitation and non-disclosure covenants when, among other things, he failed to return Connection documents following his termination, "accepted a position . . . and worked simultaneously for a direct competitor to solicit Connection's clients," and "shared Connection's confidential information to facilitate such solicitation." SJ Order 17.

9. After the SJ Order, Griffith filed another improper interlocutory appeal (Doc. 339), and on September 2, 2025 he moved to stay this matter pending the resolution of that appeal. (Doc. 338.) Griffith also moved to extend the deadline to file a motion to reconsider the SJ Order and other rulings in the August 19, 2025 Order. (Doc. 337.)

10. On October 21, 2025, the Court denied Griffith's motion to stay, and on November 6, 2025, the Supreme Court denied Griffith's appeal (Doc. 349). Thereafter, on November 18, 2025, this Court issued a Clarification Order (Doc. 350) that, among other things,

granted Defendant until November 28, 2025, to move for reconsideration of the August 20 Order.

11. Griffith did not move for reconsideration of the August 20 Order. Instead, on December 1, 2025, he moved for reconsideration of the Court's Clarification Order. (Doc. 352). Connection objected to Griffith's December 1 motion (Doc. 353), and on January 9, 2026, Griffith replied to Connection's objection (Doc. 360). On January 14, 2026, the Court denied Griffith's motion for reconsideration.

## II. ARGUMENT

### A. Legal Standard

12. "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." RSA 491:8-a, III. "A dispute of fact is 'genuine' if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party." *Pennichuck Corp. v. City of Nashua*, 152 N.H. 729, 739 (2005). A fact is material if it affects the outcome of the litigation. *Fisher Cat Development, LLC v. Johnson*, 2022 WL 19255400 at *2 (N.H. Super. Jun. 15, 2022)(Anderson, J.) (citing *Bond v. Martineau*, 164 N.H. 210, 213 (2012)). Conclusory allegations in affidavits or statements of material facts are insufficient to create a genuine issue of material fact. *See Fastrack Crushing Services, Inc. v. Abatement Int'l/Advatex Assoc., Inc.*, 2002 WL 33963954 at Section III (N.H. Super. Mar. 6, 2002) (Abramson, J.); *see also Nowaczyk v. Shaheen*, 2001 WL 276960 at *3 (D.N.H. Mar. 16, 2001) (finding that unsupported, implausible claims, and creative conspiracy theory, "do not qualify as evidence sufficient to raise a genuine issue as to material facts.").

### B. The Agreement Explicitly Provides For Recovery of Fees Caused By Griffith's Breach

13. As this Court held, Griffith breached restrictive covenants in the Agreement. As a result of that breach, Connection was forced to bring this lawsuit in April 2023 to obtain injunctive relief. In the ensuing years, Connection then was forced to respond to and defend against a torrent of pleadings filed by Griffith challenging the legality of the restrictive covenants and of Connection's efforts to enforce the same. Under the express terms of the Agreement, Connection should be awarded damages equal to the attorneys' fees incurred to respond to Griffith's breach.

14. It is well established in New Hampshire that an award of attorneys' fees is proper where there is a contractual agreement between the parties for such relief. *See Holloway Automotive Group v. Giacalone,* 169 N.H. 623, 631 (2017) (remanding for an award attorneys' fees where "[t]he plain meaning of the language used by the parties is that if [the plaintiff] prevails in an action brought to enforce the Agreement, it is entitled to attorney's fees and costs."); *see also Tulley v. Sheldon*, 159 N.H. 269, 272 (2009) (overturning trial court decision and awarding attorneys' fees where liability had been established and the parties' contract entitled prevailing party to all costs incurred). The interpretation of such contractual language is a question of law. *Id.*

15. In this case, the Agreement unambiguously entitles Connection to an award of attorneys' fees incurred as a result of Griffith's breach of the non-disclosure and non-solicitation covenants in the Agreement.

16. Accordingly, with respect to Connection's damages under Count III, Connection is entitled to a ruling on summary judgment that its recoverable damages constitute the reasonable attorneys' incurred as a result of Griffith's breach of the Agreement.

WHEREFORE, Connection respectfully requests that this Honorable Court enter an Order:

A. Holding that the damages recoverable by Connection under Count III are the reasonable attorneys' fees incurred as a result of Griffith's breach of the non-disclosure and non-solicitation covenants in the Agreement; and

B. Granting such other relief as may be just and proper.

Respectfully submitted,

PC CONNECTION, INC.,
D/B/A CONNECTION

By its attorneys,

Dated: May 6, 2026

*/s/ Christopher H.M. Carter*
Christopher H.M. Carter, Esq. (#12452)
Hinckley, Allen & Snyder LLP
650 Elm Street, Suite 500
Manchester, NH 03101
Tel: (603) 225-4334
ccarter@hinckleyallen.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the above date a copy of the foregoing was served on Brok-Alan Woodward-Griffith, pro se, and all counsel of record via the Court's electronic filing service.

*/s/ Christopher H.M. Carter*
Christopher H.M. Carter, Esq.

GRANTED for the reasons stated in the motion and in the reply. As noted by Plaintiff, Defendant's two objections do not respond to the issue raised in this motion but instead try to relitigate issues already resolved in this Court's August 19, 2025 summary judgment order. In light of the rulings in that order and the clear attorney's fees provision in the relevant agreement, Plaintiff is clearly entitled to an award of reasonable attorney's fees as its damages.

Honorable David A. Anderson
June 26, 2026



Clerk's Notice of Decision
Document Sent to Parties
on 07/06/2026

THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS
NORTHERN DISTRICT

SUPERIOR COURT

PC Connection, Inc., d/b/a Connection

v.

Brok-Alan Woodward-Griffith, et al.

Docket No. 216-2023-CV-00220

ORDER ON PENDING MOTIONS

Plaintiff PC Connection, Inc. ("Connection") brought this action against Defendants Brok-Alan Woodward-Griffith ("Griffith") and Data Center Warehouse, LLC ("DCW") requesting preliminary and permanent injunctive relief as well as damages. In response, Griffith brought counterclaims and cross-claims. The case arises out of alleged violations of non-solicitation and non-disclosure covenants in Griffith's employment agreement (the "Employment Agreement") with Connection. (*See generally* Pl.'s Compl. (Doc. 3.)) Upon consideration of the record, the parties' arguments, and the applicable law, the Court finds and rules as follows.

Background Facts

The following facts are derived from the undisputed material facts filed alongside the pending summary judgment motions discussed herein. (*See generally* Docs. 257, 253, 247.)

Connection, a publicly traded company, is a value-added reseller of specialized IT products and services. (Doc. 257 ¶ 79.) In October 2019, Griffith submitted an online application for an account manager position with Connection. (*Id.*) On October 23, 2019, Griffith received an email from Connection, offering him a position as Inside

Sales Account Manager. (*Id.* ¶ 81.) The email contained an offer letter and an electronic link to Connection's online "Career Center" portal, and stated: "when you select the aforementioned link, you will have an opportunity to review your Employment Agreement prior to accepting your offer of employment." (*Id.* ¶ 85.)

The Offer Letter expressly advised Griffith that he would be required, as a condition of employment, to sign the Employment Agreement, and it instructed Griffith on how to review the Agreement:

> As a condition of your employment, Connection requires that you agree to the terms of its Employee Agreement. You may review the Employee Agreement on the Career Center portal. A copy of the Employee Agreement will be presented for your signature on your first day of employment.

(*Id.* ¶¶ 86–87.) Griffith accepted Connection's offer and signed the Employee Agreement on his first day of work, November 4, 2019. (*Id.* ¶¶ 91–93.)

The Employee Agreement contains several restrictive covenants and acknowledgements. Notably, it contains a non-disclosure covenant that bars the disclosure of certain "Confidential Information," which includes Connection's strategic plans, customer needs, costs, and pricing. (*Id.* ¶ 101.) It also contains an 18-month non-solicitation covenant which barred Griffith from soliciting any Connection customer or prospective customer he worked with, contacted, or accessed confidential information about during his employment. (*Id.* ¶ 102.) Under the Employee Agreement, the periods of restriction are tolled when Griffith violates the restrictive covenants. (*Id.* ¶ 103.)

In signing the Employee Agreement, Griffith acknowledged that "any and all good will which I develop during my employment with any of the customers, [prospective] customers, subcontractors or suppliers of Connection shall be the sole, exclusive and

permanent property of the Company, and shall continue to be such after the termination of my employment, howsoever caused." (*Id.* ¶ 104.) The Employee Agreement required Griffith, upon termination of his employment, to return all Company documents in his possession or control. (*Id.* ¶ 105.) Additionally, the Employee Agreement noted that Connection would be entitled to injunctive relief in the event of a breach of the Agreement. (*Id.* ¶ 107.)

After working at Connection for several years, it appears that Griffith became discontented with planned reductions in his compensation structure. (*Id.* ¶ 122.) Specifically, because Griffith had been with Connection for three years, his base commission would be set to a fixed rate, bridge payments would end, and his base salary would be reduced. (*Id.* ¶¶ 123–24.)

As a result, Griffith began interviewing for a position with DCW, one of Connection's direct competitors, in August 2022. (*Id.* ¶¶ 80, 109.) On November 16, 2022, Griffith accepted a position with DCW as a Senior Account Executive, with an employment start date of December 1, 2022. (*Id.* ¶ 110.) However, Griffith told neither Connection nor DCW about his dual employment when he accepted DCW's offer or began work on December 1, 2022, while still employed by Connection. (*Id.* ¶¶ 111–12.) At the time, two of Griffith's largest accounts with Connection were Whoop and Generate Biomedicines. (*Id.* ¶ 113.) Griffith has conceded that DCW hired Griffith because of Griffith's relationships with these and other Connection customers that Griffith serviced during his employment with Connection. (*Id.* ¶ 114.)

After starting work for DCW, and while still a full-time Connection employee, Griffith began working to close deals with Generate Biomedicines on DCW's behalf. (*Id.*

¶¶ 115–16.) In order for DCW to begin billing Connection customers that Griffith intended to port over to DCW, Griffith forwarded confidential information concerning those customers to DCW. (*Id.* ¶ 117.) Such information was used on December 21, 2022 to close at least two orders at DCW totaling $91,000. (*Id.* ¶ 121)

On January 10, 2023, Griffith emailed his manager at Connection, Morgan Keating, stating he was providing his two weeks' notice that he was leaving the Company, and that he would be leaving to take some time off and consider next steps for his career. (*Id.* ¶ 126.) Griffith ultimately did not resign from Connection, and he proceeded to work simultaneously for Connection and DCW until he was terminated from Connection. (*Id.* ¶ 127.) Griffith's dual employment was discovered around March 7, 2023, when he communicated with one of Connection's manufacturing partners, APC, on DCW's behalf. (*Id.* ¶ 128.) Griffith urged them to transfer preferred pricing for one of Connection's customers to DCW, so that DCW could sell APC's products to them. (*Id.* ¶¶ 128–30.)

On March 8, 2023, Connection informed Griffith that his employment with the Company was terminated immediately due to the discovery that he had been working for DCW. (*Id.* ¶ 132.) This action followed.

## Analysis

Presently before the Court are 18 outstanding motions. The Court addresses each motion in turn.

### I. Griffith's Motion to Reinstate Breach of Contract Claim (Doc. 322); Connection's Objection (Doc. 326); Griffith's Response (Doc. 333)

Previously, Griffith withdrew a breach of contract claim against Connection. (*See* Doc. 168.) Griffith now moves to reinstate this withdrawn claim. (Doc. 322.) Connection objects, arguing that Griffith voluntarily sought the dismissal of his breach of contract counterclaim a year prior, and that restoring the counterclaim would be improper given the current procedural posture. (Doc. 326 at 1.) Specifically, Connection maintains that Griffith has failed to advance any reason for reviving the counterclaim and notes that since its dismissal, the parties have full briefed motions for summary judgment which resolve his remaining counterclaims. (*Id.* at 1.)

The Court agrees with Connection. "Generally, a court should allow amendments to pleadings to correct technical defects but need only allow substantive amendments when necessary to prevent injustice." *New London Hosp. Ass'n, Inc. v. Town of Newport*, 174 N.H. 68, 75 (2021); *see* RSA 514:9 (granting the trial court discretion to permit substantive amendments to pleadings at "any stage of the proceedings, upon such terms as the court shall deem just and reasonable, when it shall appear to the court that it is necessary for the prevention of injustice; but the rights of third persons shall not be affected thereby"). "Accordingly, liberal amendment of pleadings is permitted unless the changes would surprise the opposing party, introduce an entirely new cause of action, or call for substantially different evidence." *New London Hosp. Ass'n, Inc.*, 174 N.H. at 76. "An amendment may also be denied if it would not cure the defect in the complaint." *Id.* "Whether to allow a party to amend its pleadings rests in the sound discretion of the trial court[.]" *Id.*

In this circumstance, Griffith fails to identify any change in the case—such as new evidence discovered which corroborates this claim or the reopening of discovery—

that supports his request to add a claim. *Cf. Anderson v. Cigna Healthcare of Maine*, No. CV-04-685, 2005 WL 3340127, at *2–*3 (Me. Super. Ct. 2005) (granting plaintiff's motion to amend based upon new evidence in part due to three months of discovery remaining at the time of filing for defendant to prepare a defense). At this juncture, Griffith's request would prejudice Connection by requiring them to engage in new discovery and prepare a defense against a new claim on the eve of the Court ruling on summary judgment. *See New London Hosp. Ass'n, Inc.*, 174 N.H. at 78 (holding that the trial court "could have reasonably concluded that requiring the [defendant] to engage in new discovery and to prepare to defend an entirely different claim than the one originally filed, on which the court was about to render summary judgment in the [defendant's] favor, would be unfairly prejudicial to the [defendant]."); *see also Bennett v. ITT Hartford Grp.*, 150 N.H. 753 (2004) (affirming trial court's denial of a motion for nonsuit without prejudice where it found that "the amendment was a substantive amendment that would initiate new fact discovery and, thereby, prejudice [the non-moving party]").

Further, Griffith's breach of contract counterclaim is premised on Connection's alleged failure "to pay all the compensation due and ow[ed] to Griffith[.]" (Doc. 51 ¶¶ 280–84.) As Connection notes, however, this breach of contract counterclaim is duplicative of Griffith's other wage-related claims, which are the subject of Connection's motion for summary judgment discussed below. Thus, it appears that any such amendment would be futile and would not cure the defects in Griffith's burden on summary judgment.

Accordingly, Griffith's motion to reinstate his breach of contract claim is DENIED.

II. <u>Griffith's Voluntary Non-suit without Prejudice (Doc. 321); Connection's Objection (Doc. 325); Griffith's Response (Doc. 333)</u>

Currently, Griffith has two remaining counterclaims against Connection. Count IV alleges a breach of the implied covenant of good faith and fair dealing related to unpaid wages. (*See* Doc. 51 ¶¶ 195–212.) Count XII claims unpaid wages under RSA 275:53. (*Id.* ¶¶ 270–79.) Additionally, Griffith has a surviving counterclaim[1] for breach of contract against DCW. (*See* Doc. 165 ¶¶ 23–28.) Griffith now moves to voluntarily non-suit all counterclaims without prejudice against both Connection and DCW. (Doc. 321.) Connection objects and requests that the Court deny Griffith's motion, arguing that Griffith has committed himself to these counterclaims since September of 2023 and numerous filings and requests for discovery have been exchanged. (Doc. 325 ¶ 5.) Thus, Connection maintains that "[a]llowing Griffith to nonsuit his counterclaims at this late procedural posture would be manifestly unfair and would needlessly cause Connection to incur further fees and costs." (*Id.* ¶ 6.)

It has long been held in New Hampshire that the granting of a request for nonsuit is subject to the discretion of the trial court. *See Total Serv. v. Promotional Printers*, 129 N.H. 266, 275 (1987) (citing *Stevenson v. Cofferin*, 20 N.H. 288, 294 (1850)). A party waives his right to a nonsuit where "by [his] own act or agreement" he commits himself "to such an extent, that to grant [the] request would be manifestly unfair to the other side." *Id.* at 268 (citing *Wright v. Bartlett*, 45 N.H. 289 (1864)); *see* 5 Gordon J. MacDonald, Wiebusch on New Hampshire Civil Practice and Procedure § 32.11 (2025) ("A voluntary nonsuit will also not be allowed at any stage of the proceedings where the

[1] Notably, Griffith brought two sets of claims against DCW. One set he identified as cross-claims and another set he identified as counterclaims.

plaintiff has so far committed to the case by act or agreement that it would be unjust to permit the case to be discontinued or where to do so would give the plaintiff an unfair procedural advantage over the defendant.").

Upon review, the Court agrees with Connection. For over twenty-four (24) months, the parties have zealously litigated at every stage, with the total document count in this docket reaching 327—a high number given the limited issues in the case. At this juncture, both Connection and DCW have gone to great lengths to argue their entitlement to summary judgment on the claims which Griffith now seeks to nonsuit. Griffith committed himself further to this process by cross-moving for summary judgment. *See Wright*, 45 N.H. at 291 (noting that a party "by his own act or agreement, may have committed himself to such an extent, that to grant his request [for nonsuit] would be manifestly unjust to the other side"). Nonsuiting these claims appears to be an effort by Griffith to avoid the consequences of making bare and unsubstantiated assertions of fraud via the counterclaims and cross-claims while filing numerous procedurally improper Rule 7 appeals to the supreme court. The attempt to withdraw and reassert counterclaims at this stage, without basis, appears nothing more than another delay tactic aimed at forcing Connection and DCW to bear the burden of Griffith's unsuccessful gamble. *See Keshishian v. CMC Radiologists*, 142 N.H. 168, 181 (1997) (granting of a motion for nonsuit would force defendant "to bear the burden of the plaintiff's failed strategic gamble").

For these reasons, the Court finds it would be manifestly unjust to allow a voluntary nonsuit of these claims without prejudice. Equity at this posture would only allow a voluntary dismissal with prejudice. *See Roberts v. General Motors Corp.*, 140

N.H. 723, 727 (1996). However, given the Court's summary judgment rulings discussed below, dismissal with prejudice and summary judgment in Connection and DCW's favor achieve substantially the same result.

Accordingly, Griffith's motion to nonsuit is DENIED.

III. Connection's Motion for Summary Judgment (Doc. 251); Connection's Affidavit (Doc. 254); Connection's Brief Statement (Doc. 253); Connection's Memorandum of Law (Doc. 252); Griffith's Cross-motion for Summary Judgment (Doc. 310); Connection's Response (Doc. 316)

Connection moves for summary judgment on Griffith's two remaining counterclaims against it. (Doc. 310.) The aforementioned counterclaims allege unpaid wages under theories of breach of the implied covenant of good faith and fair dealing and violation of RSA 275:33. (*See* Doc. 51 ¶¶ 195–212, 270–79.) They are premised on allegations that Connection failed to pay Griffith compensation to which he was entitled to during his employment with the company—beginning on November 4, 2019 and ending on March 8, 2023. Griffith objects to Connection's motion and cross-moves for summary judgment. (Doc. 316.)

A motion for summary judgment should be granted where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." RSA 491:8-A, III. "A dispute of fact is 'genuine' if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Pennichuck Corp. v. City of Nashua*, 152 N.H. 729, 739 (2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' for purposes of summary judgment if it affects the outcome of the litigation under the applicable substantive law." *Crowe v. Appalachian Stitching Co., LLC*, 174 N.H. 679, 682 (2021). In deciding whether to grant summary judgment, the Court must consider the evidence, and all

reasonable inferences therefrom, in the light most favorable to the non-moving party. *See Clark v. N.H. Dept. of Emp't Sec.*, 171 N.H. 639, 650 (2019). Ultimately, the movant bears the burden of proving that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See Stewart v. Bader*, 154 N.H. 75, 86 (2006).

As Connection summarizes, Griffith's counterclaims for unpaid wages are based on the following allegations: (1) Connection collected a "service fee" on SPIF[2] payments Griffith earned to which he is solely entitled; (2) Connection failed to pay him SPIFs due to issues with Connection's ERP system; (3) Connection levied an undisclosed "load fee" on sales which lowered Griffith's commissions; (4) Connection reduced Griffith's guaranteed bridge payments in 2021; and (5) Connection unjustly reduced Griffith's pay in December of 2022. (Doc. 252 at 13; *see* Doc. 51 ¶¶ 133–200.) Connection maintains that there is no genuine dispute that Connection paid Griffith consistent with his Employment Agreement and Compensation Plans. (Doc. 252 at 17.) Griffith's objection relies, almost exclusively, on the argument that "Connection stands in substantial default and criminal contempt of this Court's rules, orders, and standards, and stands in criminal contempt of their duties, the Rules of Professional Conduct, and the authority and dignity of this Tribunal." (Doc. 310 ¶ 3 (emphasis removed.))

However, Griffith presents no evidence supporting his claims of malfeasance by Connection and its representatives. His conclusory assertion that Connection is in default is not borne out by the record, and he fails to specify what wages are owed or

[2] SPIF payments are vendor-provided funds that incentivize sales of specific IT products. (Doc. 253 ¶¶ 55–58.) Account managers can earn, but are not guaranteed, SPIF payments, which are paid through Connection's payroll systems. (*Id.*)

for what period. Because Griffith declined to controvert Connection's statement of material facts, all such facts are deemed admitted. *See* N.H. Super Ct. R. 12(g) ("[A]ny fact set forth in the moving party's statement of material facts shall be deemed to have been admitted unless controverted as set forth in this paragraph."); *Jeffery v. City of Nashua*, 163 N.H. 683, 685–86 (2012) ("[T]he adverse party may not rest upon mere allegations or denials of his pleadings, but his response, by affidavits or by reference to depositions, answers to interrogatories, or admissions, must set forth specific facts showing that there is a genuine issue for trial."). The Court therefore finds no genuine dispute of material facts precluding summary judgment. *See Pennichuck Corp. v. City of Nashua*, 152 N.H. 729, 739 (2005) ("A dispute of fact is 'genuine' if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party.").

When no genuine dispute of material fact exists, the Court must determine whether the moving party is entitled to judgment as a matter of law. *See N.H. Ass'n of Counties v. State*, 158 N.H. 284, 287–88 (2009) (noting that where "no genuine issue of material fact exists, [the Court] determine[s] whether the moving party is entitled to judgment as a matter of law"). Review of the undisputed facts reveals that despite Griffith's allegations of unpaid wages, all his wages and commissions appear to have been dispersed by Connection consistent with Griffith's Employment Agreement and applicable compensation plans. Without evidence to the contrary, Griffith's vague allegations of owed wages are insufficient to rebut Connection's entitlement to judgment as a matter of law. *See Hopkins v. ADP, Inc.*, No. 12–cv–238–SM, 2014 WL 2768655 at *5–6 (D.N.H. Jun. 18, 2014) (granting employer summary judgment on a wage claim under RSA 275 where the employee failed to support her claim with "sales reports,

commission reports, or the like," and where the claim amounted to "little more than rank speculation."); *see also Guldseth v. Fam. Med. Assocs. LLC*, 45 F.4th 526, 536–537, 541 (1st Cir. 2022).

Accordingly, Connection's motion for summary judgment is GRANTED and Griffith's cross-motion for summary judgment is DENIED.

IV. <u>DCW's Motion for Summary Judgment (Doc. 246); DCW's Brief Statement (Doc. 247); Griffith's Objection (Doc. 311); DCW's Response to Objection (Doc. 320)</u>

Next, DCW moves for summary judgment on Griffith's breach of contract claim against it. (Doc. 246.) Griffith's claim alleges that he had a "valid and enforceable contract for at-will employment" with DCW and despite performing all his contractual obligations, DCW breached the terms of its offer of employment by terminating him and refusing to provide funds toward his legal defense. (*See* Doc. 165, Ex. 1 ¶¶ 23–28.) Griffith objects to DCW's motion and raises a parallel argument to that raised against Connection—"DCW stands in substantial default of their obligations to the Court, and in willful and intentional defiance of Court rules, standards, and practices." (Doc. 311 ¶ 2 (emphasis removed.))

As with his similar claim against Connection, Griffith presents no evidence supporting his assertions of malfeasance by DCW and its representatives. Bare assertions do not enable Griffith to defeat summary judgment. The Court therefore finds no genuine dispute of material facts precluding summary judgment. *See* N.H. Super Ct. R. 12(g); *Jeffery*, 163 N.H. at 685–86; *Pennichuck Corp.*, 152 N.H. at 739.

Accordingly, the Court must now determine whether DCW, as the moving party, is entitled to judgment as a matter of law. *See N.H. Ass'n of Counties*, 158 N.H. at 287–

88. At issue here is a provision of Griffith's offer letter from DCW, in a paragraph entitled "Legal Concerns" which states in relevant part:

> Employee will have the full support of DCW including guidance from its' [sic] General Counsel regarding legal matters pertaining to past employment provided that employee followed management directions at all times and was not deemed negligent in their behavior or actions.

(Doc. 247, Ex. 6.) The Offer Letter also states: "It is expressly understood that this offer in no way constitutes a written employment agreement." (*See id.*) In moving for summary judgment, DCW argues that even if the offer letter created a binding agreement, the "Legal Concerns" provision does not apply because Griffith failed to meet its conditions. (Doc. 246 at 9.)

DCW emphasizes that Connection was Griffith's employer contemporaneous to his employment with DCW. (Doc. 246 at 9.) Thus, his employment with Connection was not "past employment" as the Legal Concerns provision required. Additionally, while Griffith agreed to start working for DCW and give Connection notice in early December 2022, he continued working for Connection until March 8, 2023—contrary to the directions of DCW management. (*Id.* at 9–10; *see* Doc. 247 ¶ 9; Exs. 4, 7.) Finally, DCW argues that Griffith's simultaneous employment with DCW and Connection is negligent and likely violated his duty of loyalty to DCW. (Doc. 246 at 10.)

Because the undisputed facts support DCW's contention that Griffith failed to meet these conditions precedent, the Court finds DCW did not breach the contract by withholding legal support and is entitled to judgment as a matter of law. *See Short v. LaPlante*, 174 N.H. 384, 389 (2021) (providing that contracts become "unenforceable as a matter of law upon the non-occurrence of the condition precedent").

Lastly, DCW also seeks summary judgment on its replevin and conversion claims. (Doc. 246 at 12–14; *see* Doc. 92 ¶¶ 16–24.) DCW maintains that it issued Griffith a laptop upon the start of his employment and that, as the laptop's owner, it is entitled to possession. (Doc. 246 at 12–13.) Despite repeated requests, it asserts that Griffith maintains possession of the laptop and declines to return it. (*Id.*; Doc. 92 ¶¶ 16–21.)

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Garod v. Steiner Law Office, PLLC*, 170 N.H. 1, 6–7 (2017) (citing *Kingston 1686 House, Inc. v. B.S.P. Transp., Inc.*, 121 N.H. 93, 95 (1981). "Replevin is a proceeding in which the plaintiff seeks to recover possession of personal property that has been taken from him." *Gray v. Kelly*, 161 N.H. 160, 165 (2010). New Hampshire law allows a party to seek relief under both conversion and replevin. *See Gove v. Watson*, 61 N.H. 136, 136 (1881). Specifically, a party may seek the return of property, and after it has been returned and accepted, a party may be entitled to a measure of damages—the difference between its value at the time of the conversion and at the time of its return. *See id.*

The accompanying affidavit of Griffith's former manager at DCW, Sean LeFebvre, supports that DCW is the owner of the laptop requested, reflects the manner in which the laptop was wrongfully detained, provides a description of its value, and indicates that it was last known to be in Griffith's possession. (Doc. 247, Ex. 7); *see* RSA 536-A:2. Thus, the Court finds that DCW is entitled to a writ of replevin.

Accordingly, DCW's motion for summary judgment is GRANTED. DCW is ordered to submit a draft writ of replevin, consistent with the requirements in RSA 536-A:8, to the Court within 10 days of the notice of decision accompanying this order. After it acquires the laptop, DCW may petition the Court for damages under conversion, if necessary.

V. Griffith's Motion for Summary Judgment (Docs. 179, 184); Griffith's Memorandum of Law (Doc. 180); Griffith's Attachments (Docs. 182–83); Connection's Objection (Doc. 250); DCW's Objection (Doc. 308); Connection's Cross-motion for Summary Judgment (Doc. 255); Connection's Affidavit (Doc. 258); Connection's Memorandum of Law (Doc. 256); Connection's Brief Statement of Facts. (Doc. 257)

Griffith moves for summary judgment on all of the claims brought by Connection. (Doc. 184; *see* Doc. 2.) However, Griffith neither addresses the merits of Connection's claims, nor does he respond to Connection's statement of material facts. Rather, Griffith sets forth a number of allegations that relate to his First Amended Counterclaim[3] which the Court previously dismissed on October 7, 2024. (*See* Doc. 230; Doc. 167.) In light of this dismissal and the absence of relevant legal argument, Griffith's motion for summary judgment is DENIED. *See* RSA 491:8-a.

However, in addition to filing an objection to Griffith motion, Connection cross-moved for summary judgment as to two of its claims—Count I for a preliminary injunction and permanent relief, and Count III for breach of contract. (Doc. 255.) In light of Griffith's failure to address Connection's factual allegations in its brief statement of

[3] Specifically, the memorandum of law includes argument as to the following counts: Count III (perjury), Count IV (fraud/fraudulent inducement), Count V (malicious prosecution/abuse of process), Count VI (civil conspiracy), Count VII (tortious interference with contract); Count VIII (tortious interference with economic relations); Count IX (unjust enrichment), Count X (NIED/IIED), Count XI (wrongful termination); Count XII (defamation), Count XIII (prima facie tort), Count XIV (respondeat superior), and Count XV (violation of RSA 358-A).

material facts, its allegations are deemed accepted. *See* Super. Ct. R. 12(g). The Court now focuses its inquiry on determining whether Connection is entitled to judgment as a matter of law on Counts I and III. *See N.H. Ass'n of Counties*, 158 N.H. at 287–88.

As to Count I, Connection seeks the return of nearly 12,500 documents that Griffith is alleged to possess, plus any other documents or property held in violation of Section 2.2 of the Employment Agreement. (Doc. 256 at 11.) Section 2.2 provides, in relevant part:

> 2.2 Use and Return of Documents. . . . I will safeguard, and return to the Company immediately upon termination of my employment, and/or at such other times as may be specified by the Company, all Documents and other property of the Company, and all documents, records and files of its customers, subcontractors, vendors and suppliers ("Third- Party Documents" and each individually a "Third-Party Document"), as well as all other property of such customers, subcontractors, vendors and suppliers, then in my possession or control. Provided, however, if a Document or Third-Party Document is on electronic media, I may, in lieu of surrender of the Document or Third-Party Document, provide a copy on electronic media (e.g., a properly formatted diskette) to the Company and delete and overwrite all other electronic media copies thereof.

(Doc. 257 ¶ 106.) Notably, in signing the Employment Agreement, Griffith expressly acknowledged that Connection may seek preliminary and permanent injunctive relief to enforce its rights in the event of a breach. (*Id.* ¶ 108.) Connection now seeks such permanent injunctive relief.

"It is within the trial court's sound discretion to grant an injunction after consideration of the facts and established principles of equity." *Vention Medical Advanced Components, Inc. v. Pappas*, 171 N.H. 13, 32 (2018). Here, the Employment Agreement's terms are clear and unambiguous, Griffith's breach is undisputed, and equity favors enforcement of the contractual obligation. While Griffith's employment with Connection terminated on March 8, 2023, he continues to retain Connection's

documents in direct violation of his contractual duty to return them "immediately upon termination." In signing the agreement, Griffith acknowledged that any breach of the Agreement, including Section 2.2, would subject Connection to irreparable harm.

For these reasons, the Court finds that Connection is entitled to summary judgment on Count I and permanent injunctive relief requiring the return of all documents governed by Section 2.2 of the Employment Agreement.

As to Count III, Connection's breach of contract claim alleges that Griffith breached the Employment Agreement by failing to return Connection's documents and property upon his termination and by violating the non-disclosure and non-solicitation covenants while working simultaneously for DCW and Connection. (Doc. 256 at 13–14.) "A breach of contract occurs when there is a failure without legal excuse, to perform any promise which forms the whole or part of a contract." *Poland v. Twomey*, 156 N.H. 412, 415 (2007). Here, the undisputed facts establish that Griffith breached Section 2.2, the non-solicitation covenant, and the non-disclosure covenant. Specifically, Griffith has failed to return documents owed to Connection and it is undisputed that he accepted the DCW position and worked simultaneously for a direct competitor to solicit Connection's clients. During which, Griffith shared Connection's confidential information to facilitate such solicitation—a clear breach of the terms of his Employment Agreement. (Doc. 257 ¶¶ 110–12.) For these reasons, the Court finds that Connection is entitled to judgment as a matter of law on liability under Count III.

In light of the foregoing, the Court GRANTS Connection's cross-motion for summary judgment on Counts I and III.

VI. Griffith's Motion to Stay (Doc. 323); Connection's Objection to Motion to Stay (Doc. 329)

Previously, Connection was awarded a total of $4,625.50 in attorney's fees incurred as a result of frivolous pleadings Griffith filed. At a hearing held on December 19, 2024, the Court inquired into Griffith's ability to make payments to Connection. Griffith offered to make $400 monthly payments, and the Court ordered Griffith to begin monthly payments in that amount, starting on January 15, 2025, and on the 15th of each month thereafter, until the full award was satisfied. Since then, Griffith made payments in January, February, March, and April 2025.

Griffith now moves for the Court to stay further payments based on an asserted inability to pay. (Doc. 323.) Connection objects based on Griffith's alleged "meritless, bad faith filings and litigation conduct." (Doc. 329 ¶ 4.) Further, Connection argues that it should be relieved of its obligation to respond to any of Griffith's filings until after the Court determines that a response is warranted and necessary. (Doc. 329 ¶ 8.)

Upon review of Statement of Assets and Liabilities Griffith filed with the Court, (*see* Docs. 324, 327), Griffith's Motion is GRANTED in part and DENIED in part. While the Court is cognizant of Griffith's financial constraints, it appears that Griffith still retains some capacity to make payments, in light of his $400 allocation for clothing each month. The Court reduces Griffith's monthly payments from $400 down to $300. As to Connection's affirmative request for relief from its obligations to respond to any of Griffith's filings, such an affirmative request needs to be brought in its own motion with the relevant legal basis for ordering the requested relief.

VII. Motion for Default Judgment (Doc. 309); DCW's Objection (Doc. 318); Connection's Obj. (Doc. 317)

Next, Griffith moves for the Court to enter default against Connection and DCW for "failing to provide the required answers to Griffith's complaints within the proscribed time." (Doc. 309 at 1.) Specifically, Griffith argues that both Connection and DCW failed to answer his Counterclaim and Cross-claim in accordance with the court rules and prejudiced his ability to construct a defense. (Doc. 309 at 5.)

As to Connection, Griffith maintains that Connection failed to file an answer to his First Amended Counterclaim, (*see* Doc. 167), in accordance with the N.H. Superior Court Rule 9(b), which provides that "[i]nstead of an Answer, a person responding to a pleading to which a response is required may, within 30 days after the person has been served with the pleading to which the Answer or response is required file a Motion to Dismiss."

Previously, Griffith filed his First Counterclaim against Connection, (*see* Doc. 51), and Connection moved to dismiss 15 of 18 of Griffith's counterclaims. The Court granted Connection's motion on May 2, 2024, and provided Griffith leave to amend his counterclaims within 30 days. (*See* Doc. 150.) As a result of this dismissal, only three of Griffith's initial counterclaims survived[4] and Connection had 30 days to file an answer consistent with Rule 9(b). On June 3, 2024, Connection filed its timely Answer to Griffith's surviving counterclaims and Griffith filed his First Amended Counterclaim.[5] (Ans. First Countercl. (Doc. 170); First Amend. Countercl. (Doc. 167.))

---

[4] On June 3, 2024, Griffith moved to amend his surviving counterclaims to withdraw his breach of contract counterclaim. (*See* Mot. Amend (Doc. 168.)) The Court granted this request on June 18, 2024. (*See id.*) As a result, Griffith was left with two surviving claims from his First Counterclaim.

[5] Notably, Griffith's Amended Counterclaims did not include the three surviving counterclaims from his first filing.

On July 3, 2024, Connection moved to dismiss Griffith's First Amended Counterclaim in its entirety. (*See* Doc. 176.) On October 7, 2024, the Court issued an order granting Connection's motion to dismiss. (*See* Doc. 230.) As a result of this dismissal, no unanswered counterclaims remained and Connection's obligation to answer Griffith's First Amended Counterclaim was discharged. In light of the aforementioned procedural history, the Court does not find that Connection is in default under Rule 9(b).

The Court now turns to Griffith's arguments pertaining to DCW. Griffith maintains that DCW has not filed an answer to his Cross-claim or First Amended Counterclaim, which were filed on June 3, 2024.[6] (*See* Docs. 165, 167.) However, on August 2, 2024, DCW moved to dismiss Griffith's Cross-claim and First Amended Counterclaim. (*See* Doc. 198.) On October 10, 2024, the Court granted DCW's motion in part, and dismissed all claims Griffith brought against DCW except for Griffith's Breach of Contract claim. (*See* Doc. 236 at 6.) At this point, Rule 9(b) required DCW to file an answer within 30 days addressing Griffith's single outstanding claim.

Instead, however, DCW moved for summary judgment on October 21, 2024 in lieu of filing an answer. (*See* Doc. 246.) The Court does not find the absence of an answer in this circumstance to be a basis for default. Notably, RSA 491:8-a, I provides that DCW may file a motion for summary judgment *at any time*. *See* RSA 491:8-a, I (providing that a "party against whom a claim, counterclaim, or crossclaim is asserted, or a declaratory judgment is sought, may, at any time, move for a summary judgment in

[6] Griffith initially filed his Cross-claim on May 9, 2024. (Doc. 155.) However, Griffith later sought leave to amend the Cross-claim on June 3, 2024, which was granted. (Doc. 165.) At the same time, Griffith filed his First Amended Counterclaim which also included claims against DCW. (Doc. 167.)

his favor as to all or any part thereof"). Further, a default is issued only if a party "fails to timely file an answer *or otherwise defend"* a lawsuit. N.H. Super. Ct. R. 42 (emphasis added).

The record does not support any notion that DCW has failed to defend the lawsuit. Not only has DCW been an active litigant in this matter, but their prompt filing of a dispositive motion for summary judgment on the claims at issue reflects their active defense against Griffith's outstanding breach of contract claim. *See Kreik v. Partners for Payment Relief*, Case No. 2019-0729, 2020 WL 7663830, at *1 (N.H. Nov. 13, 2020) (non-precedential) (affirming the trial court and noting that it could have reasonably determined that there was good cause to waive the requirements of a timely answer under Rule 9 where the defendant appeared in defense of the lawsuit and filed a motion for summary judgment).

Accordingly, Griffith's motion for default is DENIED.

VIII. <u>Griffith's Motions to Compel (Docs. 303–07)</u>

Griffith has filed five motions compelling various discovery in this case. (*See* Docs. 303–07.) Connection argues that Griffith's motions are untimely. (Doc. 314 ¶¶ 2–3.) In June 2024, the Court granted Griffith's request for an extension to the discovery deadline in this matter to October 4, 2024, and noted that this would be the final extension granted. (*See* Docs. 151, 162.) However, Griffith's motions discussed herein were filed on April 14, 2025. This comes after Connection and DCW moved and briefed their entitlement to summary judgment. At this juncture, the Court agrees with Connection that Griffith's motions to compel should be denied on these grounds alone.

Nonetheless, if the Court were to reach the merits of Griffith's motions to compel, the Court's review would yield the same result.

(a) Griffith's Motion to Compel – Privilege Log (Doc. 307); Connection's Objection (Doc. 314)

Griffith moves for the Court to compel Connection to turn over all the documents listed in its privilege log. (Doc. 307.) The Court interprets Griffith's motion as requesting all of the 50 documents that which Connection listed on its privilege log consistent with Superior Court Rule 21. Griffith maintains that such documents should be discoverable pursuant to the crime fraud exception and that it is undisputed that Connection, DCW, and their counsels have engaged in "serious and egregious illegal and unethical conduct[.]" (Doc. 307 ¶¶ 2–4.)

This Court previously outlined the parameters for the crime-fraud exception in *Atlantic Anesthesia, P.A. v. Lehrer*, No. 218-2019-CV-00933, 2020 WL 13663044, at *1 (N.H. Super., Hills. Cty North Oct. 15, 2020), and recounts it herein. Rule 502(d)(1) of the New Hampshire Rules of Evidence provides that "[t]here is no privilege . . . [i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit in the future what the client knew or reasonably should have known to be a crime or fraud." The party invoking the crime-fraud exception must "present evidence: (1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity." *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005). "It is

often hard to determine whether the attorney-client relationship has been misused by the client for crime or fraud without seeing the document, or hearing the testimony, as to which the privilege is claimed." *Id.* "To overcome this problem . . . judges have sometimes been willing to review privileged materials by themselves *in camera* and then decide whether the other side is entitled to it." *Id.*

The United States Supreme Court has endorsed the practice of reviewing privileged material *in camera* for purposes of determining whether the crime-fraud exception applies. *See United States v. Zolin*, 491 U.S. 554 (1989). In that case, the Court noted that "*in camera* inspection is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure." *Id.* at 572. Therefore, "a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege," and the threshold "need not be a stringent one." *Id.* "Before engaging in *in camera* review to determine the applicability of the crimefraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.*

Upon review, the Court finds that Griffith has failed to present evidence substantiating that Connection was "engaged in (or was planning) criminal or fraudulent activity" when the requested privileged materials were created. *See In re Grand Jury Proceedings*, 417 F.3d at 22. Nor has Griffith shown a "factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception

applies." *Zolin*, 491 U.S. at 572. Rather, Griffith relies on unsubstantiated theories of criminal or fraudulent activity insufficient to pierce the attorney-client privilege.

Accordingly, Griffith's motion to compel is DENIED.

(b) Griffith's Motion to Compel – Verizon (Doc. 306); Connection's Objection (Doc. 314)

Griffith moves for the Court to compel Verizon Corporation to produce certain documents and information. (Doc. 306.) This request is based on his belief that somebody from Connection "attempted to confiscate his personal cell phone number[.]" (Doc. 306 ¶ 4.) Connection objects arguing that Griffith's request is not relevant and seeks information at issue in an entirely separate suit, in which discovery has been stayed by the Court. (Doc. 314 ¶¶ 15–16.)

"Although discovery rules are to be given a broad and liberal interpretation, the trial court has discretion to determine the limits of discovery." *N.H. Ball Bearings, Inc. v. Jackson*, 158 N.H. 421, 429 (2009) (citing *Scarborough v. R.T.P. Enterprises, Inc.*, 120 N.H. 707, 711 (1980)). Information requested during discovery must appear relevant and be "reasonably calculated to lead to the discovery of admissible evidence." N.H. Super. Ct. R. 35 b(1): N.H. Super. Ct. R. 21; *Scarborough,* 120 N.H. at 711. "The trial court, therefore, is permitted to keep discovery within reasonable limits and avoid 'open-ended fishing expeditions' or harassment to ensure that discovery contributes to the orderly dispatch of judicial business." *N.H. Ball Bearings, Inc.*, 158 N.H. at 429 (citing *Robbins v. Kalwall Corp.,* 120 N.H. 451, 453 (1980)).

Upon review, the Court agrees with Connection. Griffith himself notes in his filing that the evidence sought supports allegations in Docket No. 216-2025-CV-00187. Griffith fails to articulate how the requested evidence is relevant and admissible in this case or reasonably calculated to lead to the discovery of admissible evidence.

Accordingly, Griffith's motion to compel records from Verizon is DENIED.

(c) Griffith's Motion to Compel – Microsoft Records (Doc. 305); Connection's Objection (Doc. 314)

Griffith moves for the Court to compel Connection to authorize the Microsoft Corporation to "produce deleted and/or spoliated emails concerning communications" between him and his former manager, Morgan Keating. (Doc. 305 at 1.) Griffith's motion appears to be founded upon the suspicion that certain communications between Griffith and his former supervisor at Connection were deleted or concealed. Connection objects and argues that Griffith has failed to "validate his suspicions" sufficient to require a forensic examination of Connection's Microsoft accounts. (Doc. 314 ¶¶ 10–14.) Further, Connection maintains that it has produced all available data involving Griffith's communications with Morgan Keating during the operative timeframe. (*Id.*) To the extent other deleted information is sought, Connection notes that Microsoft has confirmed that no other data is available. (*See* Doc. 305, Ex. 1 ¶ 8)

Upon review, the Court agrees with Connection. Griffith has failed to articulate any basis for his suspicion of deleted or concealed emails. Nonetheless, it appears that even if an order compelling production was issued, no additional records exist than what Connection has already provided. *See N.H. Ball Bearings, Inc.*, 158 N.H. at 429.

Accordingly, Griffith's motion to compel records from Microsoft is DENIED.

(d) Griffith's Motion to Compel – Discovery and Interrogatory Answers from DCW (Doc. 304); DCW's Objection (Doc. 315)

Griffith moves for the Court to compel DCW to produce responses to Griffith's second set of discovery requests and Griffith's interrogatory requests. (Doc. 304 at 1.) Griffith contends that he propounded his first set of interrogatories on May 8, 2024, and a second discovery request on October 4, 2024.[7] (*Id.* ¶ 1.) He maintains that DCW failed to respond to his first set of interrogatories and responded to the second discovery request, but declined to produce any evidence. (*Id.* ¶ 2.)

DCW argues that it served responses to Griffith's requests on November 4, 2024, and maintains that Griffith is not entitled to any additional discovery beyond what it already furnished. (Doc. 315 ¶¶ 7–10.) DCW contends that Griffith's requests are overbroad, vague and unduly burdensome which renders compliance essentially impossible. (Doc. 315 ¶ 11.)

The Court agrees with DCW in part. Review of Griffith's requests for production reveals untenably broad requests, such as "all documents and things" that "DCW deems to be exculpatory to Griffith's defenses," "that DCW deems to be proof of Griffith's defenses," and "that DCW intends to present at trial." (Doc. 304, Ex. 2.) The Court declines to compel responses to these overbroad requests.

As to Griffith's first set of interrogatories, DCW does not articulate any reasoning for its lack of a response to the interrogatories propounded on May 8, 2024. Further, Griffith provides no basis why his motion to compel comes six months after the close of discovery and over five months after DCW moved for summary judgment. Because the

[7] DCW maintains that it received Griffith Discovery request on October 5, 2024. (Doc. 315 ¶ 5.)

Court grants DCW's motion for summary judgment below, Griffith's interrogatories, which appears to relate to his claims against DCW, appear to be moot.

Accordingly, Griffith's motion to compel responses from DCW is DENIED.

(e) Griffith's Motion to Compel (Doc. 303); Connection's Objection (Doc. 314)

Griffith moves for the Court to compel Connection to: "(1) immediately search for and produce documents in response to Griffith's discovery requests; (2) immediately comply with Defendant's Rule 24 Demand to Inspect; (3) immediately comply and produce interrogatories responsive to Defendant Griffith's requests; and (4) produce the concealed emails and/or Microsoft Teams messages between Griffith and his manager, Morgan Keating." (Doc. 303 at 1.) Griffith contends that Connection has maintained "evasive and non-responsive tactics" in responding to Griffith's discovery requests. (Doc. 303 ¶ 9.) Connection objects, arguing that it has provided timely responses to all discovery requests made before the close of discovery. (Doc. 315 ¶ 5.)

The Court agrees with Connection in part. Connection's objection specifically chronicles the discovery exchanged in this case, beginning with Griffith's first request in September 26, 2023. (*See id.*) Upon review, it appears that Connection has largely complied with its obligations. The only discovery requests which Connection did not respond to appear to be Griffith's Fourth Set of Requests for Production. Connection maintains that Griffith's requests were issued after the deadline for completing discovery in this case. However, it appears that Griffith propounded this Fourth Set of Requests

for Production on October 4 2024—the last day of the discovery period—and not after the deadline for discovery in this case.

For this reason, the Court DENIES Griffith's motion to compel all requests in this motion, but GRANTS Griffith's request to compel responses to his Fourth Set of Requests for Production only to the extent such requests are relevant to Griffith's defense to outstanding claims or are "reasonably calculated to lead to the discovery of admissible evidence." N.H. Super. Ct. R. 35 b(1).

## IX. Connection's Motion for Attorney's Fees (Doc. 280); Griffith's Objection (Doc. 286)

Connection moves for attorney's fees pursuant to the Court's September 10, 2024 Order. (Doc. 280.) Previously, the Court issued a margin Order denying Griffith's Motion to Compel Mediation Scheduling, and awarded Connection recovery of its reasonable fees for having to object to Griffith's motion. (*See* Doc. 209.) Connection submits an affidavit from Christopher Carter in support. (*See* Doc. 280, Ex. 2.) The affidavit reflects that Connection incurred $2,058.50 in attorneys' fees objecting to Griffith's motion. (*See id.*) These fees appear reasonably necessary for the drafting and filing of its objection to Griffith's motion.

Accordingly, Connection's motion is GRANTED and the Court orders Griffith to pay Connection the amount of $2,058.50. Such amount will be added to the existing amount already owed to Connection and reimbursed through the existing periodic payments order effective in this case.

## X. Griffith's Motion to Reconsider – Exclusion of Expert Witness (Doc. 275); Connection's Objection (Doc. 284)

Griffith moves for reconsideration of the Court's November 25, 2024 Order excluding the expert witness testimony and report of Andrew Lane, CPA. (Doc. 275; *see* Doc. 271.) Previously, the Court found that "Lane's expert report puts forward three opinions that *all* focus on Defendant's dismissed unfair competition claims" and that his disclosure "indicates that he will analyze the lost income and wages associated with the alleged unfair competition by considering a number of factors including Connection's business profits and general financial performance." (Doc. 271 at 1 .) Thus, the Court concluded that Griffith does not have a claim to which Lane's opinions would be relevant and granted Connection's motion to preclude Lane's testimony. (*Id.*)

Griffith raises three arguments on reconsideration. First, Griffith argues that the Court lacked jurisdiction to issue the previous order due to his second interlocutory appeal. The Court disagrees. It is a general principle that "[a]n appeal from a judgment or order that is not appealable does not divest the trial court of jurisdiction over the case, and does not render void for lack of jurisdiction acts of the trial court taken in the interval between the filing of the notice and the dismissal of the appeal by the appellate court." 5 Am. Jur. 2d *Appellate Review* § 364. The New Hampshire Supreme Court has previously applied this principle. *See Jesurum v. WBTSCC Limited Partnership*, 169 N.H. 469, 482 (2016) (concluding that the defendants' appeal "was effectively interlocutory (or premature) and did not deprive the trial court of jurisdiction to act"); *see also Boyle v. City of Portsmouth*, No. 218-2010-EQ-00100, 2018 WL 7683459 at *1 (N.H. Super. Ct. Jun. 7, 2018) (*Delker*, J.) (noting that a notice of appeal filed without permission from the Court is an improperly filed interlocutory appeal that does not deprive the trial court of jurisdiction). For this reason, the Court had jurisdiction to issue

its previous order. Even if the Court assumes that it did not, the supreme court has summarily dismissed all of Griffith's procedurally improper interlocutory appeals in this docket and the Court would still reach the same result.

Second, Griffith argues that Mr. Lane's report is relevant to his remaining two counterclaims. The Court again disagrees. As previously noted, Mr. Lane's report fails to analyze any actual unpaid wages. Rather, the report focuses on future lost earnings by analyzing Connection's financial data and projecting future performance, which is irrelevant to Griffith's two remaining counterclaims.

Finally, Griffith argues that Connection has refused to turn over accounting materials in discovery related to unpaid SPIF payments and wages owed to Griffith. The Court does not see how this argument applies to the relevance and admissibility of Mr. Lane's report or testimony. Even if this argument does apply, Griffith fails to articulate with any particularity what documents he requires that Connection declined to provide and how Mr. Lane would fill that gap. To the contrary, Connection proffers that it produced all relevant "payroll records, sales summaries, and SPIF reconciliation statements during the course of discovery." (Doc. 284 ¶ 5.)

In light of the foregoing, the Court finds that Griffith has failed to present on reconsideration "points of law or fact that a court has overlooked or misapprehended." *Broom v. Cont'l Cas. Co.*, 152 N.H. 749, 752 (2005); *see also* Super. Ct. R. 12(e). Accordingly, Griffith's motion for reconsideration is DENIED.

XI. Griffith's Motion to Extend Deadlines (Doc. 274); Connection's Response (Doc. 283); DCW's Response (Doc. 278)

On December 2, 2024, Griffith moved to stay all present case deadlines in light of his pending appeals to the New Hampshire Supreme Court, and his request to intervene in *State of New Hampshire v. Anna Barbara Hantz Marconi*. (Doc. 274; *see* Case No. 217-2024-CR-01167.) Because the Court largely stayed matters during the pendency of Griffith's appeals, which finally returned from the supreme court on June 3, 2025, and the Court allotted time for the parties to respond to outstanding motions, the instant motion seeking an extension of past deadlines is DENIED as moot.

XII. <u>Griffith's Motion for Contempt – Christopher Carter (Doc. 273); Connection's Objection (Doc. 283)</u>

Previously, Griffith moved to compel Connection to comply with the case structuring deadlines set by the Court. (*See* Doc. 209.) Connection objected and requested its fees and costs. (*See* Doc. 213.) Upon review, the Court denied Griffith's motion by margin order:

> DENIED: The original structuring order for this case required mediation by May 17, 2024. Although most of the dates in this initial order have been continued, the Court did not come across an order extending the mediation deadline in its review of the lengthy file. In any event, there is no question that this Court suggested late October or early November during the July 25, 2024 hearing as an optimal time for mediation and that neither party objected to that suggestion. Accordingly, Connection has not acted in bad faith in insisting on mediation in that time frame. Griffith's motion, however, was filed in bad faith given the July 25, 2024 hearing. Connection is awarded its reasonable attorney's fees in having to file an objection to this motion.

(Doc. 209.) Griffith now moves for an order holding Connection's counsel, Christopher H.M. Carter, Esq., in contempt for not having moved as of December 2, 2024 for recovery of the fees awarded by the Court on September 10, 2024. (Doc. 273.)

However, the September 10, 2024 Order neither compelled Connection to file for its fees, nor did it establish a deadline for Connection to move for recovery of those fees.

Accordingly, Griffith's motion for contempt is DENIED. The Court finds Griffith's motion frivolous in light of the original order's plain language. Connection is awarded its reasonable attorney's fees in having to file an objection to this motion.

## XIII. Griffith's Motion to Vacate the Preliminary Injunction (Doc. 238); Connection's Objection (Doc. 249)

On June 2, 2023, the Court granted Connection's request for a preliminary injunction, which prohibited Griffith, *inter alia*, from soliciting 31 Customers with whom Griffith did business during his employment at Connection. (*See* Doc. 25.) Griffith now moves to vacate the preliminary injunction challenging, in part, the duration of the injunction. (Doc. 238.) Connection objects, and argues, in part, that the injunction has "properly continued in place given the tolling provision with[in] Griffith's Employee Agreement." (Doc. 249 ¶ 2d.) Based on the argument presented, the Court disagrees with Connection.

The non-solicitation covenant in the Employment Agreement, which forms the basis for the preliminary injunction, only prohibits the non-solicitation of customers during "the 18-month period immediately following the termination of [Griffith's] employment . . ." (Doc. 2, Ex. A § 4.3.) The tolling provision provides that "the periods of restriction set forth in Paragraph 4 of this Agreement shall be tolled, and shall not run, during any period of time in which I am in violation of the terms thereof, in order that the Company shall have all of the agreed-upon temporal protection recited herein." (*Id.* § 4.6.) However, Connection has not identified any violation of the terms of the non-

solicitation covenant since Griffith's termination, which would result in the tolling of the 18-month non-solicitation period. Because more than 18 months have elapsed since Griffith's March 8, 2023 termination from employment, the Court sees no basis for the preliminary injunction to remain in effect. Thus, Griffith's motion to vacate the preliminary injunction is GRANTED.

## Conclusion

In light of the foregoing, the Court rules as follows: Griffith's Motion to Reinstate Breach of Contract Claim (Doc. 322) is DENIED; Griffith's Motion for Voluntary Non-suit without Prejudice (Doc. 321) is DENIED; Connection's Motion for Summary Judgment (Doc. 251) is GRANTED and Griffith's Cross-motion for Summary Judgment (Doc. 310) is DENIED; DCW's Motion for Summary Judgment (Doc. 246) is GRANTED, and DCW shall submit a draft writ of replevin within 10 days; Griffith's Motion for Summary Judgment (Doc. 179) is DENIED, while Connection's Cross-motion for Summary Judgment (Doc. 255) on Counts I and III is GRANTED; Griffith's Motion to Stay (Doc. 323) is GRANTED in part, reducing monthly payments to $300; Griffith's Motion for Default Judgment (Doc. 309) is DENIED; Griffith's five Motions to Compel (Docs. 303–07) are DENIED, except for a limited grant requiring Connection to respond to Griffith's Fourth Set of Requests for Production; Connection's Motion for Attorney's Fees (Doc. 280) is GRANTED in the amount of $2,058.50; Griffith's Motion to Reconsider Expert Witness Exclusion (Doc. 275) is DENIED; Griffith's Motion to Extend Deadlines (Doc. 274) is DENIED as moot; Griffith's Motion for Contempt (Doc. 273) is DENIED, with Connection awarded reasonable attorney's fees for responding; and Griffith's Motion to Vacate the Preliminary Injunction (Doc. 238) is GRANTED.

SO ORDERED.

August 19, 2025
Date

David A. Anderson
Associate Justice

Clerk's Notice of Decision
Document Sent to Parties
on 08/20/2025